IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LENORE KABASINSKAS, Personal Representative of the Estate of Frederic D. Kabasinskas, | CASE NO. 8:10CV111 |
| Plaintiff, | |
| vs. | |
| WILLIAM R. HASKIN, individually, GEORGE W. WESLEY, III, individually, US XPRESS, INC., a Tennessee corporation, and US XPRESS LEASING INC., a Tennessee corporation, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on the Defendants' motion for partial summary judgment regarding the issue of punitive damages (Filing No. 92)[1] and the Defendants' objection to Plaintiff's second response to the motion (Filing No. 120). For the reasons discussed below, the Court concludes that Nebraska law applies to the issue of punitive damages and, therefore, punitive damages are not available to the Plaintiff.

## PROCEDURAL BACKGROUND

This case was first filed in the District Court of Douglas County, Nebraska (Filing No. 9-1), then removed to this Court and voluntarily dismissed by the Plaintiff, without prejudice. (8:09CV369, Filing No. 13.) The Plaintiff then re-filed the case in federal court in the Western District of Oklahoma. (Filing No. 1.) Defendants moved to dismiss for improper venue or, alternatively, to transfer the case to federal court in Nebraska.[2] (Filing No. 9.)

---

[1] Filing numbers refer to filings in this case, 8:10CV111, unless otherwise stated.

[2] Defendants' alternative argument that the case should be transferred to Nebraska was brought under 28 U.S.C. § 1404(a). (Filing No. 9, at 5.)

The parties resolved the issue by stipulating to a transfer of the case to this Court.  (Filing Nos. 15, 16.)

## FACTUAL BACKGROUND

The Amended Complaint, Answer to Amended Complaint, and the parties' briefs (Filing Nos. 94, 112, 115), and Indexes of Evidence (Filing Nos. 93, 113, 114, 116),[3] reveal that there is no genuine dispute as to the following facts, unless otherwise noted.

At approximately 7:00 p.m. on September 19, 2008, Defendants William R. Haskin and George W. Wesley, III, working as a driving team for Defendant US Xpress, Inc. ("USX"), arrived at a customer's parking lot in Greeley, Colorado.  The customer was Owens Brockway Glass Container, Inc. ("Owens").  They had driven a tractor and pulled a trailer, both of which were owned and maintained by USX and/or US Xpress Leasing, Inc. ("USXL"), collectively "US Xpress," through Nebraska to Colorado.  Haskin and Wesley dropped off the trailer and, in the Owens parking lot, hooked their tractor to the trailer at issue in this case, that had been delivered from California by another US Xpress driver. That trailer, not fully loaded, contained 37,094 pounds of Sony electronic equipment to be delivered to a Sony warehouse near Chicago.  After both Haskin and Wesley allegedly inspected the vehicle, Wesley drove the tractor and trailer (collectively the "truck") approximately 226 miles eastbound and stopped at a rest area on I-80 near Sutherland,

---

[3]The Plaintiff filed a "second response" to the summary judgment motion, together with additional evidence.  (Filing Nos. 117, 118.)  Defendants object to the filing of these materials.  (Filing No. 120.)  NECivR 7.0.1(c) provides that no briefs or evidence may be filed following the moving party's reply without leave of court.  Because Plaintiff did not request leave to file the additional brief and evidence, those materials have not been considered.  The Defendants' objection will be granted based on NECivR 7.0.1(c), and the Court need not reach Defendants' additional arguments.

Nebraska, at about 11:45 p.m. Haskin then took over driving the truck eastbound on I-80, and Wesley went into the truck's sleeper compartment. Haskin was driving when, soon after 12:00 a.m. on September 20, 2008, two wheels fell off the left rear tandem axle ("fifth axle") of the trailer on I-80 near mile marker 197 close to Brady, Nebraska. One of the wheels rolled into the main traveled portion of eastbound I-80 where it was first struck by Frederic D. Kabasinskas at 12:08 a.m., resulting in his death. The same wheel was struck at 12:15 a.m. by Karen L. Olmsted. Haskin reported the accident to US Xpress, and the Nebraska State Patrol responded. Nebraska State Trooper Christopher Lutes interviewed Haskin at the scene. Other than a small oil leak and some unsheathed wiring, findings deemed common by Trooper Lutes, the only defect found on the truck after a comprehensive State Patrol inspection was missing wheels.[4]

The Plaintiff and her decedent were, at the time of the accident, residents of Colorado. Haskin is a resident of Michigan. Plaintiff claims that Wesley is an Ohio resident, while Defendants state that he is a Michigan resident, noting that service of the summons and complaint was made on Wesley at his home in Michigan (Filing No. 51).

Defendant USX is a Nevada corporation. Defendants state USX's principal place of business is in Tennessee. Plaintiff disagrees that USX's principal place of business is in Tennessee, but agrees that USX operates its business from an office complex in Chattanooga, Tennessee, where its operational, sales, financial, and management

---

[4]A total of four wheels had come off the trailer, two each from the fourth and fifth axles. Much of the submitted evidence relates to when the wheels came off the fourth axle and whether the drivers knew about the missing wheels from the fourth axle. However, Defendants admit their expert will testify that the wheels from the fourth axle came off in Nebraska. Two wheels were found near the site of the accident, including the wheel that came to rest in the lane(s) of I-80, and two wheels have not been located.

business functions are centered. USX has been registered since 1997 as a foreign corporation with the Nebraska Secretary of State and is authorized to do business in Nebraska. USX owns commercial real property in Lincoln, Nebraska, assessed in 2008 at a taxable value of $1,646.460. As of the date of the accident, USX operated a terminal (the "Nebraska Terminal") at its Lincoln, Nebraska, address. In 2008, strategic business functions were performed at the Nebraska Terminal, including dispatching, management of owner/operator relationships, and vehicle storage. As of August 31, 2008, USX employed 32 office employees at the Nebraska Terminal and assigned 100 USX drivers to the Nebraska Terminal. Also as of August 31, 2008, 199 USX drivers identified Nebraska as their domicile. In 2008, for purposes of fuel tax allocation USX allocated 7,403,661 taxable fuel miles to travel within Nebraska. In 2008, USX issued invoices for 4,058 outbound freight loads originating in Nebraska, resulting in gross revenue of $7,139,781. In 2008, USX issued invoices for 3,797 inbound freight loads delivered to Nebraska addresses, resulting in a gross revenue of $5,056,610.

Defendant USXL is a Tennessee corporation formed to hold title to vehicles and other property. USXL has no employees and performs no other function. Defendants state USXL's principal place of business is in Tennessee. Plaintiff states USXL's principal place of business is in Oklahoma.

The Complaint alleges that the death of Frederic D. Kabasinskas was caused by negligence on the part of the Defendants. The parties agree that Nebraska law applies to issues regarding liability. Defendants argue that Nebraska law also controls the issue of punitive damages, and Plaintiffs argue that Oklahoma and Tennessee laws apply regarding punitive damages based on where the corporate Defendants do business.

## STANDARD OF REVIEW

"Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 907 (8th Cir. 2010) (quoting *Thomas v. Union Pac. R. Co.*, 308 F.3d 891, 893 (8th Cir. 2002)). The proponent of a motion for summary judgment "'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgersen v. City of Rochester*, 605 F.3d 584, 594 (8th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The proponent need not, however, negate the opponent's claims or defenses. *Celotex Corp.*, 477 U.S. at 324-25.

In response to the proponent's showing, the opponent has an "obligation to come forward with specific facts showing that there is a genuine issue for trial." *Dahl v. Rice Cnty. Minn.*, 621 F.3d 740, 743 (8th Cir. 2010) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). A genuine issue of material fact is more than "some metaphysical doubt as to the material facts." *Conseco Life Ins. Co.*, 620 F.3d at 910 (quoting *Matsaushita Elec. Indus. Co.*, 475 U.S. at 586).

## DISCUSSION

**Basis of Transfer**

The choice of law depends on the nature of the transfer of this case from the Oklahoma federal court. When a case is transferred under 28 U.S.C. § 1404(a) for

convenience of the parties and witnesses, the law of the transferor court applies. *Wisland v. Admiral Beverage Corp.,* 119 F.3d 733, 735 (8th Cir. 1997). However, when a transfer is allowed due to improper venue under 28 U.S.C. § 1406(a), the law of the transferee court applies. *Id.* at 736.

In this case, as in *Wisland,* the nature of the transfer is not readily apparent. Defendants moved the Oklahoma court to transfer the case to Nebraska due to improper venue or, alternatively, to transfer venue for the convenience of the parties and witnesses. In the response filed by Plaintiff Lenore Kabasinskas to Defendants' motion to transfer, she argued that venue was proper in Oklahoma. (Filing No. 14, at 3.) The Oklahoma connection appears to be based on Plaintiff's position that USXL's principal place of business is in Oklahoma. Neither the parties' joint motion to transfer, nor the court order transferring the case pursuant to the parties' stipulation, cited to § 1404(a) or § 1406(a). However, the order specifically granted the defendants' "alternative" motion to transfer venue. Therefore, this Court will presume that the case was transferred under § 1404(a), and that Oklahoma's choice-of-law rules apply.[5]

**Choice of Law**

The "most significant relationship test" is set out in the Restatement (Second) of Conflict of Laws. In determining the state having the most significant relationship to the accident and parties in this case, the contacts to be considered include:

---

[5]As Defendants note, the difference between Nebraska and Oklahoma is meaningless, as both states apply the "most significant relationship" test set out in Restatement 145 and 146 of the Restatement (Second) of Conflict of Laws. *Wright v. Trinidad Drilling, LP,* No. CIV-09-0840-HE, 2010 WL 3212732, at *1 (W.D. Okla. Aug. 11, 2010); *Softchoice Corp. v. MacKenzie,* 636 F. Supp. 2d 927, 935 (D. Neb. 2009).

    (1) the place where the injury occurred,

    (2) the place where the conduct causing the injury occurred,

    (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

    (4) the place where the relationship, if any, between the parties occurred.

*Moody v. Ford Motor Co.,* No. 03CV0784-CVE-PJC, 2006 WL 346433, at *1 (N.D. Okla. 2006) (quoting Restatement (Second) Conflicts of Law, § 145).

These contacts "'must be balanced in accordance with their significance" to general principles that include:

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result, and

    (g) ease in the determination and application of the law to be applied.

*Id.,* at *2 (quoting Restatement (Second) of Conflicts, § 6). *Accord In re Derailment Cases,* 416 F.3d 787, 795 (8th Cir. 2005).

The factors listed above result in a presumption in a tort case that the law of the forum state, in this case Nebraska, applies absent an overriding interest of another state. *Holmes v. Hegwood,* No. CIV-05-1036-F, 2006 WL 2679540, at *2 (W.D. Okla. Sept. 18, 2006). Defendants argue that the presumption should prevail in this case because

7

Nebraska has the most substantial relationship to the accident and to the parties, noting that the accident and conduct preceding the accident occurred in Nebraska. Defendants also argue that the relationship between the corporate Defendants and Nebraska is strong, although the drivers resided elsewhere. In summary, Defendants argue that the factors listed in § 145 of the Restatement generally indicate that Nebraska has the most significant relationship to the accident and the parties. They then argue that the more general policy considerations listed in § 6 of the Restatement also support the application of Nebraska law due to Nebraska's constitutional prohibition against punitive damages.

The Plaintiff draws the Court's attention to *Fanselow v. Rice,* 213 F. Supp. 2d 1077 (D. Neb. 2002), as a factually similar case. *Fanselow* involved a car and tractor/trailer accident near Lincoln, Nebraska. The driver and passenger in the car, both Colorado residents, suffered injuries. The passenger died three months later. The driver of the car was a plaintiff, as were the passenger's surviving children who resided in Colorado, Massachusetts, and California. The corporate defendant was both incorporated and had its principal place of business in Minnesota. The driver of the tractor/trailer was a resident of Texas at the time of the accident, but later relocated to Oregon. The case was filed in the eastern district of Texas and removed to the U.S. District Court for the District of Nebraska under 28 U.S.C. § 1406(a).[6] The parties agreed that Nebraska law covered most issues in the case, with the important exception of punitive damages. Plaintiffs filed a

---

[6]As in this case, confusion existed in *Fanselow* with respect to the statute that governed the change of venue. Plaintiffs cited 28 U.S.C. § 1404(a) in their motion to change venue. The order did not cite to a statute but stated that plaintiffs did not contest that venue was improper in the Texas court. In reviewing the facts, Judge Urbom concluded that the case was properly transferred under § 1406(a) and therefore applied Nebraska choice-of-law rules.

motion to determine the choice-of-law issue with respect to punitive damages, arguing that Minnesota law should apply to the corporate defendant because Minnesota was the corporate defendant's state of incorporation and principal place of business, and the laws of Oregon should apply to the defendant who drove the tractor/trailer because he was then an Oregon resident.[7] Defendants argued that Nebraska's prohibition on punitive damages applied. *Id.* at 1078-79. Judge Urbom viewed the relative policy interests and then considered the contacts set out in § 145 of the Restatement. He determined that the only states concerned with *imposing* punitive damages were those with significant contacts with the defendants. In *Fanselow,* those jurisdictions included: Minnesota, the state of incorporation and principal place of business of the corporate defendant; and Oregon, the state of the driver's residence. *Id.* 1084-85. Judge Urbom also considered the interests of Nebraska, where the accident occurred and the majority of the conduct that led to the accident occurred. Judge Urbom then reasoned that "deterring future wrongdoing by the defendants 'would most benefit' their respective states of residence, while protecting two non-resident defendants against excessive financial liability provides little benefit to Nebraska or its citizens." *Id.* at 1086. Judge Urbom therefore concluded that Minnesota and Oregon had the most significant relationship to the accident and parties with respect to the issue of punitive damages. *Id.*

In this case, the Defendants distinguish *Fanselow* by arguing that Nebraska was not only the place of the accident and of the conduct that led to the accident, but that USX

---

[7]As an alternative, plaintiffs argued Texas law applied. Because Judge Urbom decided that Minnesota and Oregon had the most significant relationships to the accident and parties, he did not reach the alternative argument regarding Texas law.

9

"owns property, has employees, administers trucking assets, pays taxes, ships freight, and otherwise engages in material business operations in Nebraska, generating millions of dollars of economic activity."  (Filing No. 115, at 7-8.)

Here, the Court's options as to the application of law on the issue of punitive damages are: (1) Nebraska, which has a constitutional prohibition on punitive damages *(see, e.g., Distinctive Printing & Packaging Co. v. Cox,* 443 N.W.2d 566, 574 (Neb. 1989), and whose law may apply based on the factors argued by Defendants, including the site of the accident and pre-accident conduct, and its status as one of USX's places of substantial business activity; (2) Oklahoma, which allows punitive damages sparingly and only in the "most egregious circumstances," *Estrada v. Port City Props., Inc.,* No. 107552, 2011 WL 1467727, at *3 & n. 21 (Okla. Apr. 19, 2011), and whose law may apply based on Plaintiff's argument that Oklahoma is USXL's principal place of business; (3) Tennessee, where punitive damages are only recoverable when a defendant acts intentionally, fraudulently, maliciously, or recklessly, *Sanford v. Waugh & Co., Inc.,* 328 S.W.3d 836, 848 (Tenn. 2010), and whose law may apply based on USXL's Tennessee incorporation and business performed there by both USX and USXL; and (4) Michigan, where punitive damages are generally not allowed and may be recovered only when authorized by statute, *Adair v. Utica Cmty. Schs.,* No. 288286, 2010 WL 1924868, at *12 (Mich. App. May 13, 2010), *appeal denied,* 793 N.W.2d 241 (Mich. 2011), and whose law may apply based on the residence of both drivers.

Turning to the factors in § 6 of the Restatement, this Court concludes, as Judge Urbom did in his *Fanselow* analysis, that all factors are relatively neutral.  The last two factors relating to "certainty, predictability and uniformity of result" and the "ease in the

determination and application of the law to be applied" may weigh slightly in Nebraska's favor. The focus then turns to the various states' policies underlying their positions with respect to punitive damages as well as the contacts set out in § 145.

In Nebraska, punitive damages are not recoverable because they contravene Neb. Const. art. VII, § 5, which provides that fines and penalties should be appropriated exclusively to public schools in the subdivisions in which they arise. *Distinctive Printing & Packaging Co. v. Cox,* 443 N.W.2d 566, 574 (Neb. 1989).

Oklahoma has an interest in protecting its citizens from injury, deterring wrongdoing, and punishing wrongdoing. *Patten v. GMC Chevrolet Motor Div.,* 699 F. Supp. 1500, 1508 (W.D. Okla. 1987); *Thiry v. Armstrong World Indus.,* 661 P.2d 515, 517 (Okla. 1983).

In imposing punitive damages in extreme cases, Tennessee seeks to punish wrongdoers and deter harmful conduct. *Aguirre Cruz v. Ford Motor Co.,* 435 F. Supp. 2d 701, 704 (W.D. Tenn. 2006).

Michigan has a strong interest in protecting corporations doing business within its borders in order to promote the corporate financial stability of the businesses that operate in Michigan, the "overall economic well-being of its citizenry," and the attraction of new business. *Kemp v. Pfizer, Inc.,* 947 F. Supp. 1139, 1143 (E.D. Mich. 1996). *See also Kelly v. Ford Motor Co.,* 933 F. Supp. 465, 471 (E.D. Pa. 1996).

Applying the relevant factors in §145 of the Restatement to this case, Nebraska is the place where the injury occurred, where the conduct causing the injury occurred, and where the relationship of the parties with respect to the conduct, the accident, and its aftermath is centered. The factor addressing the residence, place of incorporation, and place of business of the parties leads to consideration of Nebraska, Oklahoma, Tennessee,

and Michigan. In Oklahoma and Tennessee, punitive damages are allowed only sparingly. Viewing the factors in § 145, the contacts with those states are not particularly strong. The contacts with Michigan are not particularly strong. The focal point of the contacts under the facts of this case is Nebraska. Nebraska is where: the conduct leading to the accident occurred; the accident happened; and, importantly, where USX is registered as a foreign corporation and regularly does business, owns real property, operates a terminal, and employs workers.[8] These facts distinguish this case from *Fanselow,* "where the only connection [Nebraska] ha[d] with the defendants is that it was the location of the accident giving rise to the lawsuit." *Fanselow,* 213 F. Supp. 2d at 1085. Therefore, under the particular facts of this case, the Court concludes that the law of the forum state – Nebraska – applies to the issue of punitive damages.

IT IS ORDERED:

1. The Defendant's motion for partial summary judgment on the issue of punitive damages (Filing No. 92) is granted; and

2. The Defendant's objection to the Plaintiff's second responsive brief and evidence (Filing No. 120) is granted.

---

[8]The Court is not persuaded by the Plaintiff's argument that a relatively small portion of USX's business is done in Nebraska. Rather, the Court finds that USX has a consistent presence in Nebraska in various aspects of its business, although the percentage of its business in Nebraska may not be large.

DATED this 18th day of May, 2011.

BY THE COURT:

S/Laurie Smith Camp
United States District Judge