## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **LENORE KABASINSKAS, Personal Representative of the Estate of Frederic D. Kabasinskas,** ) ) ) ) | **CASE NO. 8:10CV111** |
| **Plaintiff,** ) ) ) | |
| vs. ) ) ) | **MEMORANDUM AND ORDER** |
| **WILLIAM R. HASKIN, individually, GEORGE W. WESLEY, III, individually, US XPRESS, INC., a Tennessee corporation, and US XPRESS LEASING INC., a Tennessee corporation,** ) ) ) ) ) ) ) | |
| **Defendants.** ) | |

This matter is before the Court on the Defendants' motion in limine (Filing No. 87) to exclude the testimony of the Plaintiff's proposed experts David W. Kassekert, Paul Eason, and Steven Krizan. Evidence and briefs have been submitted by the parties, but the parties have not requested oral argument or an evidentiary hearing.

### FACTUAL BACKGROUND

At approximately 7:00 p.m. on September 19, 2008, Defendants William R. Haskin and George W. Wesley, III, working as a driving team for Defendant US Xpress, Inc. ("USX"), arrived at a customer's parking lot in Greeley, Colorado. They had driven a tractor and pulled a trailer, both of which were owned and maintained by USX and/or US Xpress Leasing, Inc., collectively "US Xpress," to Colorado. Haskin and Wesley dropped off the trailer and, in the parking lot, hooked their tractor to the trailer at issue in this case and proceeded to drive that trailer toward a location near Chicago. After both Haskin and Wesley allegedly inspected the vehicle, Wesley drove the tractor and trailer (collectively the "truck") eastbound and stopped at a rest area on I-80 near Sutherland, Nebraska, at about

11:45 p.m. Haskin then took over driving the truck eastbound on I-80, and Wesley went into the truck's sleeper compartment. Haskin was driving when, soon after 12:00 a.m. on September 20, 2008, two wheels fell off the left rear tandem axle ("fifth axle") of the trailer on I-80 near mile marker 197 close to Brady, Nebraska. One of the wheels rolled into the main traveled portion of eastbound I-80 where it was first struck by Frederic D. Kabasinskas at 12:08 a.m., resulting in his death. The same wheel was struck at 12:15 a.m. by Karen L. Olmsted. Haskin reported the accident to US Xpress, and the Nebraska State Patrol responded. Nebraska State Trooper Christopher Lutes interviewed Haskin at the scene. Other than a small oil leak and some unsheathed wiring, findings deemed common by Trooper Lutes, the only defect found on the truck after a comprehensive State Patrol inspection was missing wheels.[1]

The Complaint alleges that the death of Frederic D. Kabasinskas was caused by negligence on the part of the Defendants. Defendants seek under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude the opinion testimony of Plaintiff's proposed expert witnesses, David W. Kassekert, Paul Eason, and Steven Krizan.

## *DAUBERT* STANDARD

Federal Rule of Evidence Rule 702 allows for the admission of expert opinions. An expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R.

---

[1] A total of four wheels had come off the trailer, two each from the fourth and fifth axles. Much of the submitted evidence relates to when the wheels came off the fourth axle and whether the drivers knew about the missing wheels from the fourth axle. However, Defendants admit their expert will testify that the wheels from the fourth axle came off in Nebraska. Two wheels were found near the site of the accident, including the wheel that came to rest in the lane(s) of I-80, and two wheels have not been located.

2

Evid. 702. In light of *Daubert* and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999),[2] this Court must screen proffered expert testimony for relevance and reliability. *Bland v. Verizon Wireless, (VAW) L.L.C.,* 538 F.3d 893, 896 (8th Cir. 2008). A reliable opinion must be based on scientific methodology rather than on subjective belief or unsupported speculation. *See Turner v. Iowa Fire Equip. Co.,* 229 F.3d 1202, 1208 (8th Cir. 2000). Furthermore, the expert's information or opinion must "assist" the trier of fact to understand or determine a fact in issue. Fed. R. R. Evid. 702.

In assessing reliability, the Court should consider factors including whether the proposed expert's theory, methodology or technique: 1) can be and has been tested; 2) has been subjected to peer review; 3) has a known or potential rate of error; and 4) is generally accepted by the relevant community. *Bland,* 538 F.3d at 896. This list of factors is not exclusive, and this Court is allowed "great flexibility" in its analysis. *Jaurequi v. Carter Mfg. Co.,*173 F.3d 1076, 1082 (8th Cir. 1999).

### DAVID W. KASSEKERT

David W. Kassekert intends to offer the following conclusions as opinion testimony:

1. the wheels and tires on the fourth axle were removed, possibly in Greeley, Colorado;

2. the lug nuts on the fifth axle were not tightened to the required torque, or were loosened, probably when the wheels were removed from the fourth axle;

---

[2]The Supreme Court held that *Daubert* applies to all expert testimony, not only scientific expert testimony. *Kumho Tire Co.,* 526 U.S. at 141.

3. Haskin and Wesley should have noticed the missing wheels and loose lug nuts during their pre-trip inspection in Greeley and the inspection Haskin testified he did in Sutherland, Nebraska;

4. as the wheels on the fifth axle became loose, the driver would have known there was a problem due to wobbling and vibrating and should have pulled over before the wheels separated from the trailer; and

5. the accident was preventable and would not have occurred had Haskin and Wesley not been the drivers.[3]

(Filing No. 88-3, at 11).

Mr. Kassekert is an engineer. His educational background includes bachelor's and master's degrees in mechanical engineering and one year's study in automotive engineering. He took metallurgy classes while in school, but his engineering specialty is not metallurgy. He is president of Keystone Engineering Consultants, Inc., and also works as a sales representative for a Brazilian specialty alloy foundry. He has never worked in the trucking industry. He has worked on fifty cases involving trucks, but never on a case involving wheel separation from an eighteen-wheeler tractor-trailer combination such as the vehicle at issue in this case.

The Court concludes that Mr. Kassekert is not qualified under Rule 702 as an expert witness in this case. Mr. Kassekert cannot testify to any of his opinions with a reasonable degree of engineering certainty. His conclusions are based on speculation rather than on scientific methodology. His theories have not been tested or subjected to peer review, and

---

[3] Mr. Kassekert's report includes a sixth conclusion that is primarily repetitive of his fourth conclusion.

4

there is no evidence that they are generally accepted by the relevant community. Mr. Kassekert has not attempted to rule out alternative explanations and, because he lacks familiarity with similar vehicles under similar conditions, has not sufficiently connected the proposed testimony with the facts of the case. Therefore, his opinions are not reliable and do not meet the *Daubert* standard.

Specifically, as a basis for his opinions, Mr. Kassekert refers to three articles that he found through the web site of the Society of Automotive Engineers ("SAE") and a general Internet search. One article, *Mechanism of Wheel Separations*; Bailey, Mark & Bertoch, James, Society of Automotive Engineers, 2009-01-0111, discusses wheel separation in passenger cars, light trucks and recreational vehicles as opposed to the type of vehicle involved in the instant case. The article lists two potential causes for wheel separation: improperly tightened nuts; and a loss in clamping force due to a very small amount of wear in mating components. Mr. Kassekert physically examined the components of the tractor-trailer involved in this case, but not until approximately one year after the accident. The parts had been outside and were very rusty, and therefore he was unable to see whether the mating surfaces were worn at all, let alone to a small degree, and he could not determine whether worn mating surfaces might have contributed to the wheel separation. Therefore, Mr. Kassekert could not offer an opinion as to which of the two causes of wheel separation suggested in the article might have been the cause in this instance.

Mr. Kassekert also relied on *The Detachment of Wheels from Commercial Vehicles*; Searle, John, Society of Automotive Engineers, 861974. The 1986 article discusses the detachment of wheels from commercial vehicles in the United Kingdom. Mr. Kassekert was unable to discuss the relationship or relevance between wheel maintenance in 1986 in the

United Kingdom and wheel maintenance in 2008 in the United States. While Mr. Kassekert concluded that the nuts on the vehicle in this case were loose, he acknowledged that the Searle article discusses cases in which nuts were properly tightened. Mr. Kassekert could not explain the meaning of the acronyms "HGV" and "PSV" used in the Searle article.

The final article he relied upon was *Heavy Truck Wheel Separation: Failure Modes and Classifications*; Ferrone, Christopher & Kopernik, Dror, PE; Triodyne Safety Brief, Volume 13, Number 3, December 1997. This safety brief was not published by the SAE, but rather by Triodyne, a consulting engineering company. Mr. Kassekert had no information indicating that the article had been peer-reviewed. The article states that if wheel nuts are loose, the wheels will vibrate causing crack permeation of the wheel disc. Mr. Kassekert testified that he saw no cracks in his visual inspection of the wheel components in this case, and he did not perform any tests to determine whether cracking existed.

Also, Mr. Kassekert opined that the wheels came off the fourth axle at a different time than the wheels came off the fifth axle. However, he could not estimate the time difference and did not perform any testing to prove his theory. Mr. Kassekert admitted that he does not know why the wheels came off the trailer. He was unable to rule out the possibility that the damage to the fifth axle occurred between Sutherland and Brady. Mr. Kassekert had no specific facts or evidence to support his theory that the wheels from the fourth axle were removed in Greeley. Mr. Kassekert has never driven an eighteen-wheel tractor-trailer combination. He has not performed any testing or analysis to determine how any vibration caused by the loss of the wheels on the fifth axle at the back of the trailer

would be felt by the driver through the wheel, the length of the trailer, and the kingpin that attaches a tractor to a trailer. His opinion that the vibrations would travel to the tractor was based on his "belief." Mr. Kassekert opined that, in addition to vibrations, Haskin should have been aware of the missing wheels from the fifth axle by looking in his rearview mirror. However, he could not say with certainty that the wheels on the fifth axle would be visible to a driver of the eighteen wheeler at night. Mr. Kassekert acknowledged that no literature exists with respect to wheel separation from eighteen wheelers in the United States.

For the reasons discussed, the Defendants' motion in limine to exclude the expert testimony of David W. Kassekert is granted.

### PAUL EASON, PHD.

Paul Eason, PhD., intends to offer the following conclusions as his opinion testimony:

1. the difference in the damage to the front and rear axle studs is evidence that the front wheels did not detach under the same conditions as the rear wheels;

2. the extensive wear on the rear axle studs resulted from the cyclical contact with the wheel as it wobbled in place for numerous cycles over the time the lugs backed off the studs, eventually releasing the wheels from the axle;

3. the absence of the damage described in (2) above on the front axle studs proves the wheels were removed from the vehicle before it was driven, because they could not have come off while rolling without leaving a damage pattern like the one seen on the rear studs;

4. assessment of when the wheels may have been removed is obscured by the fact that there was no post-trip inspection report available for trailer # 64389. Operation of the vehicle without receipt of this report violates FMCSR 396.7;

5. the absence of the front wheels before leaving the Sutherland rest stop is incongruous with Haskin's testimony that he inspected the wheels at the Sutherland rest stop, meaning he did not perform the required pre-trip inspection;

6. even the most cursory inspection would have alerted Haskin that the wheels were missing from the rear axle, which would have prevented him from operating the vehicle in an impaired state;

7. the damage profile on the rear axle studs indicates that the rear wheels wobbled on the studs for an extended period of time before their detachment, and this deteriorating condition should have been noted by Haskin, either by visual cues in his side mirrors or significant mechanical feedback in the form of vibrations;

8. the wheel and tire lying in the interstate would not have been sufficient visual cues to drivers traveling at typical highway speeds and thereby created an unknown hazard to drivers traveling behind Haskin;

9. but for the wheel and tire in the road, the two subsequent accidents would not have occurred, and Kabasinskas would not have died;

10. but for Haskin's failure to perform an appropriate pre-trip inspection as required under FMCSR 392.7, the accident would not have occurred;

11. but for Haskin's failure to secure vehicle equipment, the accident would not have occurred; and

12. despite the failure to complete the required pre-trip inspection and appropriate maintenance, but for Haskin's further failure to react to the increasingly impaired state of the vehicle by exiting the roadway before the loss of the wheels, the accident would not have occurred. Continuing to operate the vehicle in an unsafe condition is a violation of FMCSR 396.7.

(Filing No. 88-5, at 2-3.)

Regarding his qualifications, Dr. Eason earned: a bachelor of science degree in materials science and engineering with dual specialization in metallurgy and ceramic engineering; and a doctor of philosophy degree in material science and engineering with an emphasis in metallurgy, environmental attack and alloy development. He is a full-time assistant professor at the University of North Florida. He is also a graduate faculty member at the University of Florida. The latter position allows him to work in research programs; he does not teach at that university. He is a licensed engineer in Florida and a certified fire and explosion investigator. He is a member of several professional societies. An introductory paragraph in his curriculum vitae summarizes his expertise:

> Dr. Eason combines experience from academia, industry, and consulting to address a variety of engineering and forensic subjects. His broad based materials engineering education allows him to examine product defect and safety issues of metals, plastics, glass, and ceramics, including corrosion, fatigue, overload, and material selection. [Dr. Eaton] has also actively participated in risk assessment for project management and failure modes and effects analysis in process and product design. As a forensic consultant, he has combined his knowledge of materials behavior with traditional techniques of fire investigation to tackle complex cause and origin issues and product liability concerns. [Dr. Eaton] is also a nationally certified fire and explosion investigator and a licensed professional engineer in the state of

> Florida. He is versed in multiple forms of materials analysis, teaches undergraduate courses in materials engineering and mechanical design, and has worked on projects involving product design and manufacturing, product defects, failure analysis, corrosion, fire and explosion origin and cause, and industrial accidents.

(Filing No. 88-5, at 5.)

The Court concludes that Dr. Eason is not qualified under Rule 702 as an expert witness in this case. With respect to his opinions that federal regulations were violated, the general rule is that "expert testimony on legal matters is not admissible." *Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.,* 320 F.3d 838, 841 (8th Cir. 2003) (regarding FAA regulations). While Dr. Eason has vast academic experience, a common theme throughout his deposition testimony was that he could not testify to a reasonable certainty with respect to many matters because he had not examined the truck components or performed any testing to support his theories. Finally, he lacks experience with the type of vehicle involved in this case.

Dr. Eason based his opinions on his review of depositions and discovery documents, including photographs of the truck components. Dr. Eason stated that, if he had the opportunity "to do an up-close inspection of the studs, as well as potential destructive analysis, [he] could get a better idea of the extent of damage that was done to the rear axle, as well as better documentation of damage to the front studs." (Filing No. 88-4, at 9.) He described testing that he would perform, which would involve driving a similar truck with the same distributed load with missing wheels and loose lug nuts on an open road. By doing such a test, Dr. Eason would hope to learn how long the situation would last and how it would manifest itself mechanically to the driver. Yet, without having done such testing Dr. Eason opined that Haskin was alerted by "significant feedback" to wheels that were very

loose. Dr. Eason did perform a "failure analysis" based on his viewing of photographs. He described a "failure analysis" as viewing photographs and drawing conclusions from them. Dr. Eaton had worked on fifteen to twenty projects involving eighteen wheeler tractor-trailer combinations, but only on one project involving wheel separation from an eighteen wheeler while the truck was being driven. In that case, he was retained as a metallurgist, and he performed a failure analysis.

Dr. Eason stated that he had been provided with and read articles, but he was waiting to examine the truck components in person before determining the articles' relevance. He reviewed the 1986 Searle article discussing trucks in the United Kingdom. He candidly stated he did not rely on the article because he was not knowledgeable about differences between wheel components and their regulation in the United Kingdom in 1986 as compared with the United States in 2008. He could not rule out the clamping mechanism described in the Searle article as a cause for the separation of the wheels from the fifth axle in this case.

Dr. Eason discussed a 1992 SAE technical article and the 2009 SAE article written by Bailey, Mark and Bertoch. He did not wish to rely on those articles without having inspected the wheel components. He was unable to rule out the wear process in clamping components as described in the 2009 article as the cause for the wheel separation from the fifth axle in this case.

Dr. Eason acknowledged that he could not state with a reasonable degree of engineering certainty that the truck was driven from Greeley, Colorado, to Sutherland, Nebraska, without wheels on the fourth axle. Dr. Eason believes the wheels were removed from the fourth axle at or before Sutherland, yet he could not rule out separation as

opposed to removal. Dr. Eason was hesitant to draw conclusions regarding how the wheels were removed or separated without a physical inspection of the truck components. He was unable to opine when damage to the fifth axle occurred. Dr. Eason could not offer an opinion as to whether Haskin should have seen the fourth axle at night, as he did not know specific facts that applied to Haskin's particular situation, including the amount of available natural light.

For the reasons discussed, the Defendants' motion in limine to exclude the expert testimony of Paul Eason, PhD., is granted.

### STEVEN KRIZAN

Steven Krizan intends to offer these conclusions as his opinion testimony:

1. FMCSR 396.13 was violated for the reason stated in his report;

2. FMCSR 392.7 and 393.205 were violated for the reason stated in his report;

3. FMSR 392.7, 393.205 and 396.3.1 were violated for the reason stated in his report;

4. company policy results in unsafe driving or drivers using unsafe equipment to complete their deliveries;

5. the wheels and tires on the fourth axle were never present or were removed sometime before the accident;

6. the wheel nuts on the fifth axle were either loosened or never properly torqued. It is conceivable they were loosened when the wheels and tires were removed from the fourth axle;

7. the wheels and tires from the fifth axle warned Haskin that the wheel nuts were becoming loose through vibrations and wobbling, and he had enough time to stop before the wheels came off the trailer.

8. if Haskin and Wesely inspected the trailer as they stated, they would have noticed the wheels and tires missing from the fourth axle as well as loose wheel nuts on the fifth axle; and

9. the accident was preventable through more attention by Haskin and Wesely to the vehicle as well as safety requirements and regulations.

Concerning Mr. Krizan's qualifications as an expert witness, he underwent truck training from the 1970s through the 1990s. His training did not include accident reconstruction. He has worked in the trucking industry in various capacities for thirty-five years. Mr. Krizan is a truck mechanic who works for Mr. Kassekert's business, Keystone Engineering Consultants, Inc., in Pennsylvania, as well as for his brother's trucking business and school. The latter company owns two or three eighteen-wheeler trucks. Mr. Krizan is in charge of the company's truck maintenance, and he is also the company's safety director. Mr. Krizan teaches diesel and heavy truck mechanics, Pennsylvania state inspection, and commercial driver's license ("CDL") training. Annually, approximately 80 to 120 student drivers go through the CDL program, during which Mr. Krizan drives eighteen wheelers with the students between two and ten hours a day.

The Court concludes that Mr. Krizan is not qualified under Rule 702 as an expert witness. With respect to his opinions that federal regulations were violated, again the general rule is that "expert testimony on legal matters is not admissible." *Southern Pine Helicopters, Inc.,* 320 F.3d at 841. Mr. Krizan has valuable mechanical experience.

13

However, he has not seen the truck components in this case or done any testing, calculations, measurements, or chemical analysis to prove his theories. Rather, he based his opinions on some of the available photographs[4], documents, a reading of some of the depositions taken, and his experience as a mechanic. He has driven a similar vehicle, but not under similar conditions to those involved in this case.

With respect to this case, Mr. Krizan testified that in Greeley the truck was missing wheels on the front axle, possibly missing a brake drum, had loose lugs on the back, and some unsheathed wiring. Mr. Krizan testified that in his experience local trucking companies have policies that wheels be retorqued fifty to one hundred miles after being replaced. However, he did not know whether USX had such a policy. He testified that checking the tightness of wheels is part of a vehicle's annual inspection. The truck in question had an annual inspection on September 10.[5] The inspection report stated that the wheels were checked, but Mr. Krizan could not tell specifically whether the torque was checked. He could not say with any certainty where the tires on the fourth axle were removed, yet he believed it was in Greeley. He could not opine when the wheels on the fifth axle became loose. Although he opined that Haskin and Wesely continued driving the compromised truck because they could earn more when driving than when on "breakdown time" while the missing wheels would be replaced, he did not know whether a relevant company policy existed that would have encouraged such behavior.

---

[4]Mr. Krizan testified that he did not view all of the Nebraska State Patrol's photographs.

[5]The year was not stated. If the inspection was done in 2008, it preceded the accident by only ten days.

14

Mr. Krizan opined that the wheels and tires on the fifth axle would have vibrated enough that Haskin would have felt the vibration.  He based his opinion on his one-time experience road testing a truck with loose wheels on the right front and left rear of an unloaded trailer.  He did not remember when he drove the truck.  He drove on a public road, but not on an interstate.  Mr. Krizan testified that with added weight vibrations would be more apparent.  He did not know the distance between the fifth axle on the USX truck and the kingpin or between the kingpin and the driver's seat in the USX tractor, nor had he done any testing to see whether vibrations caused by loose wheels on the fifth axle could be felt in the driver's seat of a truck similar to the USX truck.  He acknowledged he had never operated a vehicle in the condition of the USX vehicle at interstate speed.

For the reasons discussed, the Defendants' motion in limine to exclude the expert testimony of Steven Krizan is granted.

For the reasons discussed,

IT IS ORDERED that the Defendants' motion in limine (Filing No. 87) to exclude the testimony of the Plaintiff's proposed experts David W. Kassekert, Paul Eason, and Steven Krizan is granted.

DATED this 27th day of May, 2011.

BY THE COURT:

S/Laurie Smith Camp
United States District Judge